# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## NORTHERN DIVISION
## AT COVINGTON

CIVIL ACTION NO. 10-55-DLB

KASSIE GARRETT                                                    **PLAINTIFF**

VS.                      <u>**MEMORANDUM OPINION AND ORDER**</u>

STRUCTURED CABLING SYSTEMS, INC., and
CREAG ADAMS                                                      **DEFENDANTS**

* * * * * * * * * * * * * * *

This matter is before the Court on Defendants' Fed. R. Civ. P. 12(b)(6) Motion to

Dismiss for failure to state a claim.  (Doc. # 11).  The motion having been fully briefed, it

is now ripe for review.  (Docs. # 11, 13, 14).  For the reasons set forth below, Defendants'

motion will be **granted.**

## I.     BACKGROUND

Plaintiff Kassie Garrett filed a complaint with the Equal Employment Opportunity

Commission (EEOC) on July 22, 2009 and received a right-to-sue notice from the EEOC

on February 24, 2010.  (Doc. # 7, ¶¶ 41–42).  On March 17, 2010, Plaintiff filed a Complaint

naming Structured Cabling Systems, Inc. and Creag Adams as Defendants.  (Doc. # 1).

The "Jurisdiction, Venue, and Parties" section of the Complaint included Plaintiff Kassie

Garrett and Defendant Structured, but not Defendant Creag Adams (Doc. # 1, ¶¶ 5–6); it

also referred to two defendants not listed in the caption—Rob Smith and Amber Spegal,

both allegedly employees of Sound System Service.  (Doc # 1, ¶¶ 7–8).  The balance of

the Complaint did not reference Defendants Structured or Adams.

1

Defendants Structured and Adams moved to dismiss the Complaint, arguing that while it made allegations of sexual harassment against Rob Smith and Amber Spegal, it failed to set forth a single allegation against Defendants. (Doc. # 3). Plaintiff acknowledged that through "oversight, inadvertence and excusable neglect," the body of the Complaint did not include "Defendants' names[ ] and actions." (Doc. # 4). This Court observed that the original Complaint was merely a duplicate of the complaint filed by Plaintiff's counsel in *Oldham v. Sound System Services*, 2:10-cv-2-WOB. (Doc. # 6).[1]

To correct these deficiencies, Plaintiff Garrett filed an Amended Complaint[2] on July 8, 2010 alleging that Defendants sexually harassed her, which created a hostile work environment. (Doc. # 7). Defendants subsequently filed this Motion to Dismiss, arguing that Plaintiff's claims were time barred because she failed to commence an action within ninety days of receiving her right-to-sue notice from the EEOC. (Doc. # 11). Plaintiff responded that the Amended Complaint relates back to original Complaint pursuant to Rule 15(c)(1)(B) and is not, therefore, time barred. (Doc. # 13).

## II.    ANALYSIS

### A.    Standard of Review

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Though it need not contain detailed allegations, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which

---

[1] The caption and paragraph five of the original Complaint list Kassie Garrett as the Plaintiff. The remainder of the Complaint refers only to "Plaintiff." Because the Plaintiff in each complaint works for different employers and makes different allegations against different parties, it is clear that the "Plaintiff" referred to in the original Complaint is not Kassie Garrett, the Plaintiff in the Amended Complaint.

[2] This Court denied Plaintiff's Motion for Leave to File Amended Complaint *Instanter* (Doc. # 4) as unnecessary, finding that Rule 15(a)(1)(B) permitted Plaintiff to file an Amended Complaint as a matter of course. (Doc. # 6).

it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In reviewing a Rule 12(b)(6) motion to dismiss, this Court must "accept all the . . . factual allegations as true and construe the complaint in the light most favorable to the [p]laintiff." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). "When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).

To survive a motion to dismiss, a complaint must present "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Further, to survive a Rule 12(b)(6) motion, "a complaint must contain either direct or inferential allegations respecting all the material elements [of each claim] to sustain a recovery under some viable legal theory." *Hunter*, 565 F.3d at 992 (quoting *Advocacy Org. for Patients & Providers v. Auto. Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999)).

### B.    Ninety-Day Statute of Limitations Under 42 U.S.C. § 2000e-5(f)(1)

An action brought pursuant to Title VII of the Civil Rights Act of 1964 must be filed within ninety days of receiving a right-to-sue notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1) (requiring that if the EEOC dismisses a charge or does not file an action it must notify the aggrieved person and "within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge"). The action will be

time barred if it is not commenced within ninety days of receiving a right-to-sue notice. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 153 (1984) (per curiam) (determining that plaintiff did not commence a civil action within ninety days of receiving her right-to-sue notice as required by Title VII and reinstating the district court's dismissal); *Peete v. Am. Standard Graphic*, 885 F.2d 331 (6th Cir. 1989) (finding that "42 U.S.C. § 2000e-5(f)(1) requires that a complaint be filed within ninety days after the right-to-sue notice is actually *received*") (emphasis in the original).

Plaintiff received her right-to-sue notice from the EEOC on February 24, 2010 and filed her original Complaint less than ninety days later, on March 17, 2010. (Docs. # 1, 7). To correct the admitted deficiencies in her original Complaint, Plaintiff filed an Amended Complaint on July 8, 2010—135 days after receiving her right-to-sue notice from the EEOC. (Doc. # 7). Because Plaintiff's Amended Complaint was filed more than ninety days after she received her right-to-sue notice from the EEOC, it is time barred unless it relates back to the date of her original Complaint. *See* 6A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1496 (3d ed. ) (because "the requirement that a discriminatory employment-practices suit must brought within 90 days after the receipt of a right-to-sue letter is, in effect, a statute of limitations, a proposed amended complaint filed subsequent to that period may be allowed only if it meets the requirements of Rule 15(c)").

## C. Relation Back of Amendments Under Rule 15(c)(1)(B)[3]

### 1. Legal Standard

---

[3] Rule 15(c)(1)(B) was Rule 15(c)(2) prior to the December 1, 2007 Amendment to the Federal Rules of Civil Procedure. The notes to Rule 15 regarding the 2007 Amendment explain that "[t]he language of Rule 15 has been amended as part of the general restyling of the Civil Rules . . . . These changes are intended to be stylistic only." Rule 15(c)(1)(B)'s language is nearly identical to that of former Rule 15(c)(2). Thus, the two citations are interchangeable.

Under Rule 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Thus, Plaintiff's Amended Complaint will relate back only if its claims arise from the "conduct, transaction, or occurrence" set out, or attempted to be set out, in her original Complaint.

Rule 15(c)(1)(B) does not define "conduct, transaction, or occurrence." The Sixth Circuit has focused on factual allegations, rather than specific causes of action or legal theories, in applying this standard. In *Miller v. American Heavy Lift Shipping*, plaintiff filed complaints on behalf of the estates of five seamen who died after contracting leukemia, alleging their deaths were the result of exposure to asbestos and other hazardous substances while working as seamen. 231 F.3d 242, 244–45 (6th Cir. 2000). Years later, plaintiff filed amended complaints under the same theories of liability, alleging that the seamen contracted leukemia as a result of exposure to benzene and benzene-containing products, instead of asbestos, while working as seamen. *Id.* at 246.

The Sixth Circuit found that both "sets of complaints concerned the same time period and same injuries," and thus held that the amended claims arose out of the same "conduct, transaction, or occurrence" as the original claims. *Id.* at 249. The "amended complaints simply [pled] with more specificity that which appeared in the original complaints: Shippers' liability for exposing decedents to a hazardous substance." *Id.* The court conceded that "a claim with entirely different 'operative facts' will not relate back," but found that in *Miller* plaintiff alleged the "very same general set of facts." *Id.* As such, defendant's focus on the particular pathologies of the different carcinogens was "far too formalistic and specific" for

5

Rule 15(c).[4]  *Id.* at 250.  Because the benzene exposure allegations "fit comfortably" within the original allegation of exposure to "hazardous substances," the amended complaints related back.  *Id.*

The Supreme Court has also emphasized the factual nature of the "conduct, transaction, or occurrence" inquiry, using slightly different, though consistent, language. In *Mayle v. Feliz*, petitioner argued that "conduct, transaction, or occurrence" was broad enough to permit his amended habeas petition, claiming coercive questioning in a pretrial interrogation, to relate back to his original petition, which asserted a Confrontation Clause violation that occurred when videotaped testimony of a witness for the prosecution was admitted at trial.  545 U.S. 644, 651–52 (2005).  Petitioner asserted that the trial itself was the transaction or occurrence, and because both claims were "trial right[s]," the amended petition should relate back.  *Id.* at 660.  The Court disagreed, finding that relation back is only appropriate "when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."  *Id.* at 657.  Acknowledging that Rule 15(c) relation back is intended to "qualify a statute of limitations," the Court reminded petitioner that "'qualify' does not mean repeal."  *Id.* at 662–63.

Applying this fact-focused standard, the Sixth Circuit in *Moross Limited Partnership v. Fleckenstein Capital, Inc.* determined that allegations of misrepresentation and omissions in investment offering materials did not constitute the same "conduct, transaction, or occurrence" as the original allegation that defendant "cherry-picked" the best investments

---

[4]  The Court observed that, if anything, the "general, non-technical" requirements of Rule 15(c) would be relaxed in the case of diseases such as cancer and leukemia where the source(s) may be impossible to identify before discovery.  *Id.* at 250.  This rationale does not support relaxing Rule 15(c)'s standard in this case, where the cause of the alleged injuries has always been identifiable.

and allocated unprofitable trades to plaintiff. 466 F.3d 508, 518 (6th Cir. 2006). The court ruled that the later allegations of misrepresentation "involve[d] a completely different set of factual disputes from the circumstances regarding the cherry-picking claim." *Id.* Because the subsequent claims did not even "constitute 'added events leading up to the same injury' or 'an added theory of liability for the same occurrence,'" they did not relate back. *Id.* (quoting *Miller*, 231 F.3d at 248–49).

Although the focus of Rule 15(c)(1)(B) is whether an amendment arises out the same "conduct, transaction, or occurrence," the Sixth Circuit also considers "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Miller*, 231 F.3d at 250 (quoting *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)). The most important of these is notice and substantial prejudice. *Id.* (citing *Hageman*, 486 F.2d at 484) (referring to notice and substantial prejudice as "critical"). The Sixth Circuit recently emphasized notice, concluding that in the absence of a Rule 15(c) definition of "conduct, transaction, or occurrence," courts should not give content to those terms "by generic or ideal notions" but by "asking whether the party asserting the statute of limitations defense had been placed on notice that he could be called to answer for the allegations in the amended pleading." *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 516 (6th Cir. 2007) (citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006)).

In *Miller,* the Sixth Circuit found that the original complaints put defendant on notice of what plaintiff alleged in the amended complaints: "that the deceased seamen had suffered latent injuries, based upon exposure to toxic substances on board Shippers'

vessels, that eventually resulted in their deaths." *Miller*, 231 F. 3d at 251 (citing *Benco Plastics, Inc. v. Westinghouse Elec. Corp.,* 387 F.Supp. 772, 783 (E.D. Tenn. 1974), holding that if there is an "identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong, then the amendment shall relate back").

Similarly, in *Bledsoe*, the Sixth Circuit considered whether defendant had sufficient notice to allow plaintiff's amended complaint to relate back. 501 F.3d at 516. The Sixth Circuit took a "functional" approach to Rule 15(c), even looking to evidence outside the pleadings to determine whether defendant had notice of the allegations in plaintiff's amended complaint. *Id.* at 517–18.[5] Ultimately, the court found that the allegations in the original complaint that were "adequate to apprise [d]efendants of the fraudulent conduct at issue in this litigation" would relate back to the original complaint because "[d]efendants should not now be surprised" by them. *Id.* at 518.

Finally, in *Baldwin*, plaintiff argued that filing her right-to-sue notice constituted commencement of a civil action for statute of limitations purposes. 466 U.S. at 148–49. The district court disagreed, holding that the right-to-sue notice did not qualify as a complaint under Rule 8 because it provided no factual basis for the claim. *Id.* After the Eleventh Circuit reversed, *id.* at 149, the Supreme Court reinstated this decision, and observed in dictum that plaintiff's amended complaint would not have related back because it did not "give the defendant fair notice of what plaintiff's claim is and the ground upon

---

[5] In *Bledsoe*, the Sixth Circuit expressly authorized courts to consider extrinsic evidence (i.e., evidence beyond the pleadings) in evaluating whether an amendment relates back. 501 F.3d at 516–17 (concluding that "we agree with [plaintiff] that in this case the Disclosure Statement is relevant to the Rule 15(c)(2) inquiry").

8

which it rests." *Id.* at 150 n.3 (quoting *Conley*, 355 U.S. at 47). Under this framework, the Court concludes that Plaintiff's Amended Complaint does not relate back in this instance.

### 2. Discussion

Accepting all of Plaintiff's allegations as true, and construing her original Complaint and Amended Complaint in the light most favorable to her, Plaintiff's Amended Complaint will be dismissed because it was filed more than ninety days after she received her right-to-sue notice and does not relate back to Plaintiff's original Complaint.

### a. Plaintiff's proposed definition of "conduct, transaction, or occurrence" is too expansive and is not supported by law.

Determining whether an amendment to a pleading arises out the same "conduct, transaction, or occurrence" alleged in the original pleading begins by articulating the scope of the allegations in the original pleading. Plaintiff characterizes her original Complaint and Amended Complaint as alleging a single transaction: a violation of Title VII. (Doc. # 13). But neither Plaintiff nor the Court's own research has uncovered support for such an expansive definition of "conduct, transaction, or occurrence."

In *Mayle*, the Supreme Court rejected a narrower definition of "conduct, transaction, or occurrence" than Plaintiff urges this Court to accept. There, the Court dismissed as too broad the Ninth Circuit's position that "conduct, transaction, or occurrence" encompassed any new claim stemming from a habeas petitioner's "trial, conviction, or sentencing," as well as petitioner's suggestion that the definition encompassed all "trial rights." *Mayle*, 545 U.S. at 656, 660. Plaintiff's definition of "conduct, transaction, or occurrence" is also more expansive than the standard accepted in *Miller*. There, the Sixth Circuit found that both the original and amended complaints alleged a particular defendant's liability for exposing

particular decedents to hazardous substances; the amended complaint was merely more specific. *Miller,* 231 F.3d at 249.

By contrast, the only allegations common to Plaintiff's original and Amended Complaints are much less specific: "Sexual Harassment, Hostile Work Environment" and "Vicarious Liability"—nothing more. (Doc. # 13). Plaintiff's attempt to stretch "conduct, transaction, or occurrence" to cover a "violation of Title VII" lacks support in Rule 15(c)(1)(B)'s plain language or controlling precedent.

> **b. Plaintiff's definition of "conduct, transaction, or occurrence" looks only to legal claims and theories of liability in contravention of controlling legal precedent.**

Plaintiff emphasizes that the legal claims in her original Complaint and Amended Complaint are the same. This is not surprising because, as this Court previously observed, Plaintiff's original Complaint is devoid of a single factual allegation against Defendants. (Doc. # 6). And though the caption on the original Complaint lists Kassie Garrett as the Plaintiff, the facts alleged in its body make clear that the allegations are made by a different plaintiff against a different defendant. (Doc. # 1).

Unfortunately for Plaintiff, controlling case law and Rule 15(c)(1)(B)'s plain language focus on the facts and events alleged in each complaint, rather than the specific legal claims or theories of liability pleaded. For example, the Sixth Circuit described both sets of complaints in *Miller* as concerning "the same time period and same injuries," and the "very same general set of facts." 231 F.3d at 249.

Plaintiff effectively seeks to substitute one set of "conduct, transaction, or occurrence" for another, something neither Rule 15(c)(1)(B) nor the case law allows. The only commonality between the complaints in this case is the bare legal claim that sexual

harassment in the workplace led to Title VII claims.  The *facts* in each  complaint that lead

to this legal claim are fundamentally different, and no comparison of the facts alleged in

Plaintiff's two complaints could find that their claims arise from the same "conduct,

transaction, or occurrence."   The two complaints involve different parties, locations,

professions, time periods, harassment, and responses to that harassment.  (Docs. # 1, 7).

Plaintiff's original Complaint does not mention filing a complaint with the EEOC or receiving

a right-to-sue notice.  (Doc. # 1).  Consequently, the two complaints do not share the same

"core of operative facts" that *Mayle* required, 545 U.S. at 659, but do include the fatal flaw

of involving "a completely different set of factual disputes" that the Sixth Circuit identified

in *Moross*, 466 F.3d at 518.

### c.   Defendants did not have the notice Rule 15(c)(1)(B) requires for an amendment to relate back.

Plaintiff contends that Defendants "were on notice" that they were being sued

because they "had notice of the Plaintiff's identity" and "were notified of [the] filing of the

EEOC complaint."  (Doc. # 13).  Plaintiff also argues that because the amended claims

"arose out of the same conduct that prompted the complaint to the EEOC," her Amended

Complaint should relate back.  *Id.*  Finally, Plaintiff suggests that because the caption and

two counts in the original Complaint were correct, and because Defendants waived service,

they were "aware of the actions for which they were being charged and for which they were

to defend."  *Id.*

In *Baldwin*, however, the Supreme Court soundly rejected this line of reasoning.  466

U.S. 147.  And the facts in the case at bar parallel those in *Baldwin*.  As in *Baldwin*, Plaintiff

filed a complaint with the EEOC and received a right-to-sue notice when the EEOC did not

bring an action on her behalf. *Id.* at 148. As in *Baldwin*, because Plaintiff's first pleading did not articulate a factual basis for her claim, it failed to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 150 n.3. (quoting *Conley*, 355 U.S. at 47). Consequently, "[b]ecause the initial 'pleading' did not include such notice, it was not an original pleading that could be rehabilitated by invoking Rule 15(c)." *Id.* at 150 n.3.

Viewed in the light most favorable to Plaintiff, the original Complaint provided Defendants no more information or notice than they had prior to its filing—which was that Plaintiff filed a complaint with the EEOC and had the option, following receipt of the right-to-sue notice, to bring a claim within ninety days alleging sexual harassment. And even if the original Complaint served this meager purpose, it provided no factual allegations against Defendants. This, of course, falls well short of apprising Defendants of the conduct at issue in the litigation, as required by the Sixth Circuit's interpretation of Rule 15(c). *Bledsoe*, 501 F.3d at 518 (deciding that the original complaint, when considered with extrinsic evidence, was "adequate to apprise [d]efendants of the fraudulent conduct at issue in this litigation" and as such, "the allegations arise out of the same conduct, transaction, or occurrence attempted to be set forth in [plaintiff's] prior pleadings").

Plaintiff suggests that to grant Defendants' Motion to Dismiss would preclude her claim on "procedural technicalities." Quite the opposite. To deny Defendants' Motion would "exalt the form of notice over its substance" by improperly affording an otherwise blank paper status as "notice" simply because Plaintiff labeled it "Complaint." *Bledsoe*, 501 F.3d at 517. This would "run counter to the policies underpinning Rule 15." *Id.* at 517–18.

For all these reasons, Plaintiff's Amended Complaint does not relate back to her original Complaint.

### D.     Equitable Tolling

#### 1.     Legal Standard

Timely filing a civil action pursuant to 42 U.S.C. § 2000e-5(f)(1) "is not jurisdictional, [so] a court may apply equitable tolling." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 469 (6th Cir. 2003) (citing *EEOC v. Ky. State Police Dep't*, 80 F.3d 1086, 1095 (6th Cir. 1996)). Although neither party addressed equitable tolling in their pleadings, for the sake of completeness and because the Court has concluded that dismissal is warranted, the Court will discuss equitable tolling and why it has concluded that that doctrine does not save Plaintiff's otherwise untimely Amended Complaint from dismissal.

"Federal courts have typically extended equitable relief only sparingly," *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), and "have strictly enforced Title VII's ninety-day statutory limit."[6] *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000). And, as the Supreme Court has reminded courts considering equitable tolling, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin*, 466 U.S. at 152. Rather, "experience teaches that strict adherence to procedural requirements specified by the legislature is the best guarantee of

---

[6] This is particularly important because, as detailed *infra*, the Sixth Circuit has equitably tolled time limitations in several instances where plaintiff failed to timely file a complaint with the EEOC. This is distinguishable from the ninety-day limitation to file a civil action in a district court after receiving a right-to-sue notice because, as the Court in *Baldwin* highlighted, the right-to-sue notice specifically reminds plaintiffs of the ninety-day limitation. By contrast, there is no comparable procedure to directly notify potential plaintiffs of time limitations to file a complaint with the EEOC.

evenhanded administration of the law." *Graham-Humphreys*, 209 F.3d at 557 (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

Recognizing this high bar, the Supreme Court refused to equitably toll statutes of limitations in two Title VII cases with similarities to this one. In *Baldwin*, the Court concluded that plaintiff offered no support for her request of equitable tolling aside from her asserted "diligent efforts." *Baldwin*, 466 U.S. at 151. The Court observed that the "right-to-sue letter itself," the district judge, and the magistrate judge had all notified the plaintiff that she had ninety days to bring her claim. *Id.* It also eliminated other potential grounds for equitable tolling, including: where the claimant received inadequate notice (citing *Gates v. Ga. Pac. Corp.,* 492 F.2d 292 (9th Cir. 1974)); where a motion for appointment of counsel was pending (citing *Harris v. Walgreen's Distribution Ctr.*, 456 F.2d 588 (6th Cir. 1972)); where the court led plaintiff to believe she had done everything required of her (citing *Carlile v. S. Routt Sch. Dist. RE 3-J*, 652 F.2d 981 (10th Cir. 1981)); or where the defendant lulled the plaintiff into inaction (citing *Villasenor v. Lockheed Aircraft, Corp.*, 640 F.2d 207 (9th Cir. 1981); *Wilkerson v. Siegfried Ins. Agency, Inc.*, 621 F.2d 1042 (10th Cir. 1980); *Leake v. Univ. of Cincinnati*, 605 F.2d 255 (6th Cir. 1979)). *Id.* Finally, the Court dismissed plaintiff's suggestion that she was entitled to equitable tolling solely because defendant was not prejudiced by her failure to timely file, determining that the absence of prejudice is but a single factor, and "not an independent basis for invoking the doctrine and sanctioning deviations from established procedures." *Id.* at 151–52.

In the second case, *Irwin*, plaintiff filed a complaint with the Veterans' Administration (VA) alleging that he was discharged on the basis of race and physical disability. 498 U.S. at 90–91. The VA dismissed the complaint and the EEOC affirmed that decision in a letter

14

sent to plaintiff and his attorney, informing the plaintiff that under Title VII he had thirty days from receipt of the notice to file suit.  *Id.* at 91.  Plaintiff's attorney was out of the country when the letter arrived, and did not return until eighteen days later.  *Id.*  Plaintiff filed suit forty-four days after the EEOC notice was received at his attorney's office.[7]  *Id.*

The Court summarized precedent as allowing equitable tolling "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period,[8] or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass."[9]  *Id.* at 96.  In sum, the Court is "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."  *Id.* (citing *Baldwin*, 466 U.S. at 151).  The Court rejected plaintiff's argument that filing suit within thirty days of his attorney's return to the office and actual receipt of the notice tolled the statute of limitation, concluding that "the principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect."  *Id.* at 93, 96.

The Sixth Circuit has identified five factors to consider in evaluating equitable tolling: "(1) lack of actual notice of [the] filing requirement; (2) lack of constructive knowledge of [the] filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to

---

[7]  Plaintiff personally received the right-to-sue notice fifteen days after it was mailed and filed suit twenty-nine days after he received the letter.  *Id.*  The Court ruled, however, that the statue of limitations began when his attorney received the notice.  *Id.*

[8]  In support, the Court cited *Burnett v. N.Y. Cent. R. Co.*, 380 U.S. 424 (1965) (plaintiff timely filed complaint in wrong court); *Herb v. Pitcairn*, 325 U.S. 77 (1945) (same); *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) (plaintiff's timely filing of a defective class action tolled the limitations period as to the individual claims of purported class members).  *Id.* at 96 n.3.

[9]  In support, the Court cited *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231 (1959) (adversary's misrepresentation caused plaintiff to let filing period lapse); *Holmberg v. Armbrecht*, 327 U.S. 392 (1946) (same).  *Id.* at 96 n.4.

the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Bledsoe*, 501 F.3d at 519 (quoting *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988)). However, these five factors are not an "exhaustive list of factors that the court should consider in determining whether equitable tolling should apply. *Id.* (citing *Seay*, 339 F.3d at 469). Rather, equitable tolling is "determined on a case-by-case basis." *Id.* As such, in *Bledsoe*, the Sixth Circuit did not rely on any of the five factors, but equitably tolled a statute of limitations because the time between when the Sixth Circuit issued an initial decision in the litigation and when the plaintiff "would have been required to file a timely amended complaint was, as a matter of basic fairness, insufficient." *Id.*

The Sixth Circuit equitably tolled Title VII's statute of limitations in *Brown v. Crowe* because the plaintiff's untimely filing was the result of a state administrative agency's procedural errors, and not the plaintiff's fault. 963 F.2d 895, 900 (6th Cir. 1992) (finding that the "errors of the administrative agencies should not be visited upon the plaintiff" because the mistake "was manifestly not of the plaintiff's doing, nor was it within his knowledge or within his control to rectify"). In *Brown*, the Sixth Circuit attempted to balance compliance with statutorily imposed time limitations, and the equities of the case. It first summarized Sixth Circuit precedent as favoring tolling "in the absence of prejudice to a defendant, or a showing of bad faith or lack of diligence by a claimant." *Id.* at 899 (citing *Morgan v. Washington Mfg. Co.,* 660 F.2d 710, 712 (6th Cir. 1981)). But it also acknowledged that in both *Brown* and *Morgan*, the EEOC had appeared as amicus curiae advocating equitable tolling.[10] *Id.* Finally, the Sixth Circuit distinguished *Baldwin* because

---

[10] In *Morgan*, plaintiff wrote a letter to President Carter claiming sex discrimination by her employer. 660 F.2d at 711. The White House forwarded the letter to the Wage and Hour Office of the Labor Department in Nashville. *Id.* That department contacted defendant employer to inform it of the charges; it also contacted plaintiff and requested more information, which she provided. *Id.* The Wage and Hour Office received the

the plaintiff there offered only her "diligent efforts" in support of tolling, and the record was bare as to the equities to be balanced. *Id.* at 900.

More recently, in *Dixon v. Gonzales*, the Sixth Circuit affirmed the district court's equitable tolling because plaintiff's failure to timely file "was due to circumstances beyond his control." 481 F.3d 324, 331 (6th Cir. 2007). The court specifically relied on the FBI's (plaintiff's prior employer) delay in complying with plaintiff's Freedom of Information Act request for his personnel file to equitably toll Title VII's statute of limitations. *Id.* In so doing, the Sixth Circuit ignored the five factors it usually applies in equitable tolling cases. *Id.*

Likewise, the defendant's omission of critical information in response to plaintiff's question about a job was sufficient for the Sixth Circuit in *Seay* to find that the district court abused its discretion in refusing to equitably toll plaintiff's claims. 339 F.3d at 469. In reliance on defendant's response, plaintiff did not pursue his discrimination claim until it was untimely. *Id.* Without analysis or application of the five equitable tolling factors, the Sixth Circuit determined that defendant's omission was sufficient to merit equitably tolling plaintiff's claim, but cautioned that "[a] district court need not find that the employer willfully engaged in wrongful conduct to allow equitable tolling." *Id.* at 469–70.

Conversely, the Sixth Circuit did not equitably toll the plaintiff's claim in *Graham-Humphreys*, where plaintiff claimed that the ninety-day period did not begin running until she had physical possession of her right-to-sue notice, even though there was evidence that plaintiff failed to retrieve her certified mail from the post office, and that as a result, the

---

letter from the plaintiff with clarified charges on the last day of the one-hundred-eighty-day statutory filing period. *Id.* It subsequently forwarded the file to the EEOC, at which point the employer moved that the complaint be dismissed as untimely. *Id.*

notice was eventually returned to the EEOC as undeliverable. 209 F.3d at 558–59. Finding her complaint untimely, the Sixth Circuit stated that equitable tolling is typically appropriate only when "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560–61. The Sixth Circuit determined that plaintiff had constructive knowledge that the right-to-sue notice had been issued, then failed to initiate a lawsuit in the seventy-four days remaining after she obtained physical possession of the notice. *Id.* at 562. That defendant would not suffer significant prejudice was "immaterial" where the plaintiff could satisfy none of the other four equitable tolling factors. *Id* at 562 n.12. (citing *Andrews*, 851 F.2d at 151). The court admonished plaintiff that any disadvantages she may suffer as a result of her claim's dismissal would be "self-induced" and the products of "her own neglect, carelessness, inattentiveness, indifference, dereliction, and/or remissness in the exercise of minimal diligence." *Id.* (citing *Banks v. Rockwell Int'l. N. Am. Aircraft Operations*, 855 F.2d 324, 327 (6th Cir. 1988) for the proposition that a one seeking equitable tolling "must come with clean hands").

Finally, in *Amini v. Oberlin College*, plaintiff's failure to vigorously pursue his claim doomed his appeal to the Sixth Circuit to equitably toll his claim. 259 F.3d 493 (6th Cir. 2001). Plaintiff in *Amini* received a letter from Oberlin College informing him that he would not be offered a professorship, but failed to file his age, race, religion, and country of origin discrimination claim with the EEOC for about eleven months—well past the 300-day statute of limitations. *Id.* at 496–97. Plaintiff argued this delay was justified because, even though he visited the campus and repeatedly checked the College's faculty webpage, he was unable to determine whom defendant had hired instead of him. *Id.* at 501.

The Sixth Circuit affirmed the district court's denial of equitable tolling, reasoning that plaintiff: a lawyer, had constructive and actual knowledge of the filing period; conceded he had actual knowledge of the filing period; failed to pursue his claims with sufficient diligence; and made no allegations that the College had misrepresented hiring factors or interfered with his efforts to investigate. *Id.* at 500–01. Indeed, the Sixth Circuit concluded that "none of [the five factors] weigh heavily in favor of granting equitable tolling relief in this case" and though it was unclear how granting equitable relief would prejudice defendant, this factor alone is "not a sufficient basis" for awarding equitable relief. *Id.* at 501 (citing *Baldwin*, 466 U.S. at 152).

### 2. Discussion

Neither of the first two factors apply to this case because Plaintiff had both actual or constructive knowledge of the ninety-day statutory filing deadline. While actual notice or constructive knowledge of the filing deadline, alone, is not dispositive, the Sixth Circuit has emphasized these first two factors. In *Amini*, for example, the Sixth Circuit observed that as an attorney, plaintiff was aware of the 300-day limitation to filing a complaint with the EEOC. 259 F.3d at 500. Similarly, in *Graham-Humphreys*, the court highlighted that plaintiff knew that her right-to-sue notice had been issued and shortly thereafter physically obtained the notice, which expressly warned that an action had to be commenced within ninety days. 209 F.3d at 562. Finally, in *Baldwin*, the Court stressed that the right-to-sue notice, the district judge, and the magistrate judge all expressly notified plaintiff of the ninety-day limitation. 466 U.S. at 151.

If anything, Plaintiff here had more notice than the plaintiffs in the cases described *supra* and, accordingly, is less entitled to equitable tolling. Unlike *Amini*, where constructive

knowledge of the filing deadline was imputed because plaintiff was an attorney, Plaintiff received actual notice of the deadline in her right-to-sue notice. And unlike the plaintiffs in *Graham-Humphreys* and *Baldwin,* Plaintiff was represented by an attorney. Because the right-to-sue notice provided Plaintiff actual notice of the ninety-day time requirement to bring a claim, the first two factors do not favor equitable tolling. Additionally, Plaintiff's actual knowledge of the filing deadline renders the fifth factor (a plaintiff's reasonableness in remaining ignorant of the notice, or legal, requirement) inapplicable to her.

The third factor is Plaintiff's diligence in pursuing her rights. Like the first two, this factor does not rescue Plaintiff's claim. Perhaps most reflective of Plaintiff's lack of diligence in pursuing her claims is that even at this late date, Plaintiff's Response to Defendants' Motion to Dismiss fails to ask this Court to equitably toll her claims—or even reference a case along these lines, though case law is filled with such decisions. (Doc. # 13).

Sixth Circuit case law paints an equally bleak picture for Plaintiff. The Sixth Circuit favorably considered plaintiff's diligence in *Brown*, where plaintiff's untimely filing was the result of administrative agency errors. 963 F.2d at 896. Likewise, in *Dixon*, the filing delay was due to circumstances beyond plaintiff's control. 481 F.3d 331. Conversely, in *Amini*, plaintiff's frequent search of Oberlin College's faculty website and a campus visit were held insufficient diligence in plaintiff's search to determine who was hired instead of him. 259 F.3d at 501. In *Baldwin*, the Supreme Court similarly dismissed plaintiff's "asserted 'diligent efforts'" as inadequate where the record was devoid of support for that assertion. 466 U.S. at 151.

Plaintiff's untimely filing was not due to circumstances beyond her control, as in *Brown* and *Dixon*; falls short of the insufficient diligence exhibited in *Amini*; and unlike *Baldwin*, Plaintiff does not even assert diligent efforts.   As this Court observed in its Memorandum Order awarding Defendants the cost of their first Motion to Dismiss, "even a cursory review of the original Complaint by Plaintiff's counsel or anyone associated with his firm would have revealed its obvious deficiencies."  (Doc. # 6).   The Memorandum Order also observed that Plaintiff was free to amend her original Complaint as a matter of course up to, and even after, the ninety-day filing deadline.  *Id.*  Plaintiff took no action until Defendants exposed the original Complaint's deficiencies.  Had Plaintiff pursued her claim with the diligence equitable tolling requires, the original Complaint's blatant deficiencies would have been readily apparent and easily corrected.  As the Sixth Circuit admonished plaintiff in *Graham v. Humphreys*, any disadvantage Plaintiff may suffer is "self-induced" and the product of Plaintiff's counsel's own "neglect, carelessness, inattentiveness, indifference, dereliction, and/or remissness in the exercise of minimal diligence."  209 F.3d at 562.

This case resembles the lack of diligence exhibited in *Irwin,* where plaintiff's right-to-sue notice sat unopened on his attorney's desk for eighteen days.  498 U.S. at 91.  And even after the attorney obtained physical possession of the notice, he failed to file a claim within the ninety days mandated by Title VII.  *Id.*  These facts resemble Plaintiff counsel's failure to conduct a passing review of the contents of the original Complaint before the ninety-day filing deadline lapsed.   Indeed, Plaintiff counsel described his failure as "excusable neglect" (Doc. # 4)—nearly identical to the label of "garden variety claim of

excusable neglect" that the Supreme Court applied in rejecting plaintiff's request for equitable tolling in *Irwin*. 498 U.S. at 97.

The fourth factor is absence of prejudice to defendant. Defendants have not argued that they would be prejudiced if this Court equitably tolls Plaintiff's claim. This is likely because Plaintiff has not requested—or even mentioned—equitable tolling. But even taking the pleadings in the light most favorable to Plaintiff (as required in evaluating Defendants' Motion to Dismiss), and assuming that equitable tolling would not prejudice Defendants, this factor alone is "not a sufficient basis" for awarding equitable tolling relief. *Amini*, 259 F.3d at 501. Because none of the other four factors have been satisfied, lack of prejudice to Defendants is "immaterial." *Graham-Humphreys*, 209 F.3d at 562 n.12.

Because these five factors are not exhaustive, and equitable tolling is decided on a case-by-case basis, this inquiry must consider any additional, relevant factors. *Bledsoe*, 501 F.3d at 519. Unfortunately for Plaintiff, additional considerations also preclude equitable tolling in this instance.

This case does not implicate any of the fairness concerns raised in *Bledsoe.* Unlike *Bledsoe*, where plaintiff was awaiting a Sixth Circuit decision regarding his claims before amending his complaint, Plaintiff here was not delayed in filing her original Complaint or Amended Complaint. 501 F.3d at 519–20. Further, Plaintiff could have amended her original Complaint as a matter of course anytime before the ninety-day filing requirement expired.

The Sixth Circuit has also suggested that a defendant's misrepresentation or obstruction of plaintiff's investigation favors equitable tolling. *Amini*, 259 F.3d at 500–01 (observing that plaintiff did not allege that defendant misrepresented hiring factors or

interfered with plaintiff's efforts to investigate).  In *Dixon*, the Sixth Circuit relied on defendant's delay in providing plaintiff his personnel file to equitably toll the deadline.  481 F.3d at 331.  In *Baldwin*, the Court identified a defendant lulling a plaintiff into inaction as a basis for awarding equitable tolling relief.  466 U.S. at 151.  Far from making any such allegations against Defendants, Plaintiff's counsel readily concedes that it was solely his neglect that resulted in Plaintiff missing the statute of limitations.  (Doc. # 13-2). Unfortunately for Plaintiff, a litigant seeking equitable relief "must come with clean hands." *Banks*, 855 F.2d at 327.

Plaintiff's strongest argument for equitable relief likely stems from the Supreme Court's reference to equitable tolling being available "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin*, 498 U.S. at 96.  The Court's citations in support of this broad statement, however, are readily distinguishable from this case.

In *Burnett v. New York Central Railroad Co.*, plaintiff's initial claim was dismissed from an Ohio state court for improper venue.  380 U.S. 424, 425 (1965).  By the time plaintiff filed eight days later in federal district court for the Southern District of Ohio, the statute of limitations had run.  *Id.*  Because jurisdiction was proper in state court, the action was brought within the statutory period, defendant had been served, defendant had waived objection to improper venue in the past, and the majority of states had "transfer-of-venue" and "savings" statutes (though none were applicable), the Court equitably tolled the statute of limitations.  *Id.* at 429–33.

Plaintiff's case contains none of the equities at play in *Burnett*.  In *Burnett,* defendant received service of process within the statute of limitations, which apprised defendant of

plaintiff's allegations. In this case, the original Complaint did not apprise Defendants of Plaintiff's allegations. And unlike the "transfer-of-venue" and "savings" statutes referenced in *Burnett*, Plaintiff does not offer any indication of a public policy preference for saving deficient complaints resulting from "excusable neglect." (Docs. # 4, 13). Lastly, the factual distinctions between *Burnett* and this case render *Burnett* practically inapplicable. Indeed, in *Ruth v. Unifund CCR Partners*, one district court observed that "[c]ourts interpreting *Burnett* limit its application to cases where the timely initial suit was dismissed based upon improper venue." No. 5:08-CV-2689, 2009 WL 585847, at *8 (N.D.Ohio March 6, 2009) (citing *Kelley v. CSX Transp., Inc.*, No. 2:04-CV-137, 2006 WL 952216, at *6 (W.D.Pa. Apr.12, 2006); *Jones v. Saxon Mortgage, Inc.*, 980 F.Supp. 842, 848 (E.D.Va.1997)).

Finally, the Court in *Baldwin* identified awaiting appointment of counsel and the court leading a plaintiff to believe she did everything necessary to commence an action as two possible bases for equitable tolling relief. 466 U.S. at 151. Plaintiff has not suggested, nor does the record indicate, that either of these considerations is relevant here.

Plaintiff cannot satisfy any of the factors identified by the Sixth Circuit and the Supreme Court for when equitable tolling of 42 U.S.C. § 2000e-5(f)(1)'s ninety-day time limitation is appropriate. Accordingly, the Court declines to equitably toll Plaintiff's federal claims.

## III.    State Law Claims

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Novak v. Metrohealth Med. Ctr.*, 503 F.3d 572, 583 (6th Cir. 2007) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)). More specifically, "[a]fter a 12(b)(6) dismissal, there

is a strong presumption in favor of dismissing supplemental claims. *Musson Theatrical*, 89 F.3d at 1255. In light of this strong presumption, and pursuant to the discretion provided by 28 U.S.C. § 1367(c)(3), this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## IV.    Conclusion

For the reasons set forth herein, **IT IS HEREBY ORDERED** that:

1.    Defendants Structured Cabling Systems, Inc., and Creag Adams' Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 11) is **GRANTED**;

2.    Plaintiff's federal claims are **DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket;

3.    Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** and **STRICKEN** from the docket.

This 28th day of September, 2010.



Signed By:

*David L. Bunning*   *DB*

**United States District Judge**

G:\DATA\ORDERS\Cov10\10-55-Memo Order Dismissing.wpd